**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MERTON ERIC BRANSON,          )
                              )
            Plaintiff,        )
                              )
      v.                      )          1:15cv73
                              )
AMERICAN INTERNATIONAL        )
INDUSTRIES, et al.,           )
            Defendants.       )

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on "Defendant Brenntag North America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 29); "Defendant Brenntag Specialties, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 31) (each, individually, a "Dismissal Motion," and collectively, the "Dismissal Motions"); and "Plaintiff's Motion for Limited Jurisdictional Discovery" (Docket Entry 34) (the "Discovery Motion"). For the reasons that follow, the Court should deny the Dismissal Motions (without prejudice to resolution at trial of any viable personal jurisdiction issues) and will deny as moot the Discovery Motion.

### BACKGROUND

Alleging asbestos-related personal injuries, Merton Eric Branson ("Branson" or "Plaintiff") commenced this action against, among others, Brenntag North American ("BNA"), Whittaker, Clark & Daniels, Inc. ("Whittaker"), and Brenntag Specialties, Inc. ("BSI")

on January 20, 2015. (See Docket Entry 1 (the "Complaint").) Branson sued BNA and BSI "individually and as successor[s] in interest to Whittaker." (Id. at 3, ¶¶ 6-7 (all-cap font omitted).)[1] According to the Complaint, during Branson's employment at Klopman Mills in North Carolina in 1977 and 1978, he "worked with, on, and in the vicinity of asbestos-containing products and materials manufactured and sold by the Defendants herein and/or for which the Defendants are otherwise liable with regard to asbestos exposure-caused injury." (Id. at 5, ¶¶ 14-16.) The Complaint further alleges that "Branson was a consumer of Clubman talc product during the . . . relevant time period and breathed in the dust commonly generated and occurring as a result of using the Clubman product. The product has in the past tested positive for asbestos fiber material." (Id. at 5, ¶ 17.) Finally, the Complaint asserts that, inter alia:

> 23. Mr. Branson sustained repeated regular and consistent exposure to the asbestos fibers in his personal and work environment as a result of the asbestos-containing materials distributed, manufactured and fabricated by Defendants herein or for which they are otherwise liable.
>
> . . . .
>
> 28. Defendants (inclusive of any relevant predecessors-in-interest), during some or all of the relevant times, were each a manufacturer, processor,

---

1    Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

designer, seller, importer, converter, compounder, installer and/or retailer of asbestos and asbestos-related materials, or were otherwise liable for the asbestos-related injury.

29. Defendants, acting through their agents, servants, and/or employees, caused certain asbestos and asbestos-related materials to be placed in the stream of interstate commerce with the result that Mr. Branson sustained regular, consistent and repeated exposure to the Defendant's [sic] asbestos and asbestos-related materials used and installed in his work environment and at home.

30. Defendants negligently produced, sold, supplied or otherwise put into the stream of commerce asbestos and asbestos-containing products as previously identified.

31. Mr. Branson sustained exposure to Defendants' asbestos and asbestos-related materials, which exposure directly and proximately caused him to develop peritoneal mesothelioma caused by breathing dust and fibers from Defendant's [sic] asbestos-containing products.

(Id. at 7-8, ¶¶ 23, 28-31.)

Branson served the Complaint and associated summonses on BNA on February 5, 2015, and on Whittaker on January 30, 2015. (Docket Entry 22 at 1-2, 4, 7-8, 12.) Branson served the Complaint and summons on BSI at three different addresses on January 28, 2015, January 30, 2015, and February 4, 2015. (Id. at 1-3, 8-9.) Branson effected the January 28, 2015 service on BSI and the January 30, 2015 service on Whittaker through their registered agents in North Carolina. (Id. at 1-2, 4, 9, 12.) On March 13, 2015, Whittaker answered the Complaint. (See Docket Entry 15.) BNA and BSI failed to answer or otherwise respond to the Complaint until July 29, 2015. (See Docket Entries 20, 21; see generally

Docket Entries dated Jan. 20, 2015, through July 29, 2015.)[2]  BNA and BSI did not seek leave to file their untimely answers, which largely mirror Whittaker's previously filed answer (see Docket Entries 15, 20, 21), but Branson has not sought to strike these answers as untimely (see generally Docket Entries dated July 29, 2015, to present).[3]

As one of a litany of boilerplate defenses in their answers, BNA and BSI assert, without factual support, that the "Court lacks both general and specific personal jurisdiction over the Defendant."  (Docket Entry 20 at 2; Docket Entry 21 at 2.) Nevertheless, on September 4, 2015, BNA and BSI participated in the discovery conference among the parties mandated by Rule 26(f) of the Federal Rules of Civil Procedure (the "Rules").  (See Docket Entry 27 at 1.)  Then, on September 17, 2015, BNA and BSI participated in the submission of a "Joint Rule 26(f) Report" (the "Rule 26 Report") to the Court regarding the parties' agreed-upon

---

[2]  On July 29, 2015, the Court's Clerk issued a "Notice to Plaintiff of Failure to Make Service Within 120 Days," indicating that "[t]he docket in this action does not reflect that service has been obtained upon defendants[ BNA and BSI]."  (Docket Entry 19 at 1.)  Later that day, BNA and BSI filed their answers (Docket Entries 20, 21) and Branson filed an "Affidavit of Service" attesting to service upon all defendants in the action (Docket Entry 22).  The following day, BNA and BSI filed the corporate disclosure statements required by Federal Rule of Civil Procedure 7.1(b) upon a party's "first appearance[ or] pleading."  (Docket Entries 23, 24.)

[3]  The same counsel represents BNA, BSI, and Whittaker.  (See Docket Entry 27 at 5-6.)

proposed discovery plan. (Id. at 1, 4-6.) On September 26, 2015, the Court adopted the Rule 26 Report, establishing discovery on the "exceptional" case-management track, with a discovery deadline of October 31, 2016. (See Docket Entries dated Sept. 26, 2015, and Sept. 28, 2015.) Next, pursuant to Local Rule 83.9d, BNA and BSI participated in the parties' selection of a mediator for this action, whom the Court appointed on November 12, 2015. (See Docket Entry 28.)

On January 19, 2016, however, BNA and BSI filed the Dismissal Motions. (See Docket Entries 29, 31.) In its respective Dismissal Motion, BNA and BSI each

> respectfully moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that the exercise of personal jurisdiction over [the pertinent defendant] violates the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As set forth in more detail in the accompanying Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction, the pleadings and affidavit of [the pertinent defendant's] corporate representative establish that Plaintiff cannot satisfy his burden in proving that [the pertinent defendant] is subject to the jurisdiction of this Court. Accordingly, this Court should grant [the pertinent defendant's] Motion to Dismiss for Lack of Personal Jurisdiction.

(Docket Entry 29 at 1; Docket Entry 31 at 1.) In support, BNA and BSI proffer an affidavit from a corporate official attesting to its business operations. (See Docket Entries 30-1, 32-1.) Notably, although the Complaint alleges that BNA and BSI are successors in interest to Whittaker (Docket Entry 1 at 3, ¶¶ 6-7), neither affidavit mentions Whittaker (see Docket Entries 30-1, 32-1).

In response to the Dismissal Motions, Branson submitted evidence from publically available sources (i) establishing connections between BNA, BSI, Whittaker, and talc, and (ii) establishing that, at a minimum, BNA and BSI's corporate affiliates possess North Carolina connections. (See Docket Entries 35-1 through 35-17.) In addition, Branson asked that the Court delay ruling on the Dismissal Motions until Branson conducts jurisdictional discovery regarding, inter alia, the relationship between BNA, BSI, and Whittaker (Docket Entry 35 at 8) and "the nature of [BNA] and BSI's involvement in selling talc into the stream of commerce that ultimately was found in the consumer product that [Branson] used" (Docket Entry 42 at 2). (See also Docket Entry 34 at 1 (requesting "limited discovery on the personal jurisdiction issues raised by the motions to dismiss").) BSI and BNA oppose Branson's Discovery Motion, contending that "[p]ermitting Plaintiff to engage in jurisdictional discovery would amount to a waste of time and resources." (Docket Entry 40 at 1; accord Docket Entry 39 at 1.)

## DISCUSSION

### I. Dismissal Motions

### A. Rule 12 Standards

Known as "the 'raise or waive' rule," Plunkett v. Valhalla Inv. Servs., Inc., 409 F. Supp. 2d 39, 41 (D. Mass. 2006), Rule 12(h) operates "to expedite and simplify proceedings" by ensuring

6

that parties do not "delay[] consideration of th[e] threshold issue[s]" identified in Rule 12(b)(2)-(5), Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). Thus, pursuant to Rule 12(h), a party must assert a lack of personal jurisdiction defense "in [its] first defensive move, be it a Rule 12 motion or a responsive pleading," Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 692 (1st Cir. 1992) (emphasis and internal quotation marks omitted). See Fed. R. Civ. P. 12(h)(1)(B). Any Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 1998, Apr. 2016 update) ("If the defendant decides to assert a Rule 12(b) defense by motion, then he must do so before filing the answer."). Moreover, a party who forgoes a Rule 12(b) motion in favor of asserting a jurisdictional defect in its (timely) answer must promptly present that defense for the Court's consideration. See, e.g., Yeldell, 913 F.2d at 539 ("Asserting a jurisdictional defect in the answer did 'not preserve the defense in perpetuity.' This defense 'may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.'" (citation omitted) (first quoting Burton v. Northern Dutchess Hosp., 106 F.R.D. 477, 481 (S.D.N.Y. 1985); then quoting Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939))); Plunkett, 409 F.

Supp. 2d at 41-42 (explaining that "[f]ailure to press such defenses after raising them may result in abandonment" and collecting cases).

Conversely, "a party may move for judgment on the pleadings" pursuant to Rule 12(c) any time "[a]fter the pleadings are closed," as long as it moves "early enough not to delay trial." Fed. R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, the Court considers only the pleadings, (i) taking all factual allegations in the Complaint as true, (ii) taking all factual allegations in the answers as "true only where and to the extent they have not been denied or do not conflict with the [C]omplaint," and (iii) drawing all reasonable inferences in favor of the nonmoving party. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (internal quotation marks omitted). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985); see also Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) ("[A] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." (internal quotation marks omitted)).

8

As such, if "matters outside the pleadings are presented to and not excluded by the [C]ourt, the [Rule 12(c)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In that circumstance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the [C]ourt . . . that it is treating the [relevant] motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (ellipsis in original) (internal quotation marks omitted).

Notably, the Court possesses discretion to adjudicate any Rule 12(b) or 12(c) motion either "before trial" or to "order[ its] deferral until trial." Fed. R. Civ. P. 12(i); see, e.g., Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1195 (6th Cir. 1988) ("The method and timetable for deciding a Rule 12(b) motion under Rule 12([i]) is left to the sole discretion of the trial judge who may defer that determination until trial.").[4] Finally, if advanced after a responsive pleading, an ostensible Rule 12(b) motion effectively constitutes a request for preliminary adjudication

_____

    4  Prior to the (non-substantive) 2007 amendments to the Rules, Rule 12(i) appeared as Rule 12(d). 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1373 (3d ed., Apr. 2016 update).

9

under Rule 12(i). See 5C <u>Federal Practice and Procedure</u> § 1361 ("A strict interpretation of the timing provision's language leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late. However, federal courts have allowed untimely motions if the defense has been previously included in the answer. In this context, the motion becomes tantamount to a preliminary hearing under Rule 12([i])." (footnote omitted)).

## B. Personal Jurisdiction Standards

This Court may exercise jurisdiction over defendants if (i) North Carolina's long-arm statute authorizes it and (ii) the exercise of jurisdiction comports with due process under the Fourteenth Amendment. <u>Universal Leather, LLC v. Koro AR, S.A.</u>, 773 F.3d 553, 558 (4th Cir. 2014), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 2860 (2015). Two methods for achieving personal jurisdiction exist: (i) "specific jurisdiction," in which the defendant's qualifying contacts with North Carolina constitute the basis for the litigation, and (ii) "general jurisdiction," which occurs when a defendant's "affiliations with [North Carolina] are so 'continuous and systematic' as to render [it] essentially at home in [North Carolina]." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). The Court analyzes three factors in assessing whether the exercise of specific jurisdiction comports with due process: "(1) the extent to which the defendant has

10

purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003) (internal quotation marks omitted). In analyzing specific jurisdiction, the Court must focus on the nature and quality of the defendant's contacts with North Carolina. Id. In so doing, the Court "should not 'merely . . . count the contacts and quantitatively compare this case to other preceding cases.' Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Id. (ellipsis in original) (citation omitted).

If the Court considers a pretrial jurisdictional challenge without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Id. at 396. In such circumstances, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Universal Leather, 773 F.3d at 558 (internal quotation marks omitted). The Court must also construe

11

all "conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff]." Id. at 560.

## C. Proper Classification

BNA and BSI purport to present the Dismissal Motions pursuant to Rule 12(c). (See Docket Entry 29 at 1 ("mov[ing] to dismiss Plaintiff's Complaint pursuant to [Rule] 12(c) on the grounds that the exercise of personal jurisdiction over [the pertinent defendant] violates the requirements of the Due Process Clause"); Docket Entry 31 at 1 (same).) BNA and BSI do not, however, treat the Dismissal Motions as made pursuant to Rule 12(c). For instance, although Rule 12(c) asks whether the pleadings establish an entitlement to judgment as a matter of law, the memoranda in support of the Dismissal Motions reference the Complaint a total of four times, solely to identify the nature of Branson's allegations against BNA and BSI. (See Docket Entry 30 at 2 ("Plaintiff claims that BNA manufactured and sold asbestos-containing products, including talc, which were used by Plaintiff. *See* Pl.'s Compl at ¶ 6."), 3 ("Plaintiff's claims against BNA are based on the allegations that BNA manufactured and sold asbestos-containing products, including talc, which were used by Plaintiff. *See* Complaint at ¶ 6."), 7 ("Plaintiff claims that BNA manufactured and sold asbestos-containing products, including talc, which were used by Plaintiff in North Carolina. *See* Pl.'s Compl at ¶ 6."); Docket Entry 32 at 3 ("Plaintiff's claims against BSI are based on the

12

allegations that BSI manufactured and sold asbestos-containing products, including talc, which were used by Plaintiff. *See* Complaint at ¶ 7.").)[5] These memoranda do <u>not</u> address Branson's jurisdictional allegations (<u>see generally</u> Docket Entries 30, 32), and instead maintain that "Plaintiff will not be able to meet his burden of establishing that the Court has [personal] jurisdiction over [the pertinent defendant]" (Docket Entry 30 at 2; <u>accord</u> Docket Entry 32 at 1).

In addition, the decisions upon which BSI and BNA rely in support of the Dismissal Motions involve motions to dismiss under Rule 12(b)(2) or the equivalent state rule, rather than Rule 12(c) motions for judgment on the pleadings. (<u>See, e.g.</u>, Docket Entry 30 at 2-3 (relying on <u>Yates v. Motivation Indus. Equip. Ltd.</u>, 38 F. App'x 174 (4th Cir. 2002)); Docket Entry 32 at 2-3 (same); <u>see also</u> <u>Yates</u>, 38 F. App'x at 175 ("[The defendant] . . . moved to dismiss the case pursuant to [Rule] 12(b)(2), for lack of personal jurisdiction. After allowing [the plaintiff] additional time to conduct jurisdictional discovery, the [court] . . . found that the exercise of personal jurisdiction in this case was appropriate and denied [the defendant's] motion to dismiss.").) Branson likewise approaches the Dismissal Motions as made pursuant to Rule 12(b)(2) rather than Rule 12(c). (<u>See, e.g.</u>, Docket Entry 35 at 1

---

5    Moreover, the memoranda fail to even mention the defendants' answers. (<u>See generally</u> Docket Entries 30, 32.)

(asserting that "the motions to dismiss . . . . should be denied as the Plaintiff shows a *prima facie* basis for personal jurisdiction," and asking, "[i]n the alternative, . . . that the Court allow discovery on the jurisdictional issues").) Accordingly, the Court should evaluate the Dismissal Motions as untimely Rule 12(b) motions and, for the reasons discussed below, deny these motions.

### D. Rule 12(i) Analysis

As untimely motions to dismiss for lack of personal jurisdiction, the Dismissal Motions constitute Rule 12(i) requests for preliminary adjudication. See 5C Federal Practice and Procedure § 1361. The circumstances of this case render such preliminary adjudication improper.

Here, BNA and BSI neither timely moved to dismiss nor timely answered the Complaint. Instead, approximately six months after being served, BNA and BSI filed answers in which they claimed, as one of a legion of boilerplate defenses and without any factual support, that the Court lacks jurisdiction over them. (Docket Entry 20 at 2; Docket Entry 21 at 2.) BNA and BSI then proceeded to participate in the Rule 26(f) conference, to agree upon a discovery plan for this case, to submit such discovery proposal to the Court for its approval, and, following the commencement of discovery, to participate in the selection of a mediator pursuant to this Court's alternative dispute resolution procedures. (See Docket Entries 27, 28.) At no point during this process did BNA or

14

BSI challenge the Court's jurisdiction. (See, e.g., Docket Entry 27.)

Instead, nearly six months after filing their untimely answers and nearly a year after being served, BNA and BSI brought the Dismissal Motions. (See Docket Entries 20, 21, 29, 31; Docket Entry 22 at 1-3, 7-9.) By the time briefing on the Dismissal Motions and related Discovery Motion finished, six months of the discovery period had elapsed. (See Docket Entry dated Mar. 28, 2016.) Yet, rather than producing evidence gleaned from other parties during discovery, BNA and BSI only proffered affidavits from their corporate officials regarding their respective business operations. (See Docket Entries 30-1, 32-1; see also Docket Entries 36, 37.) Moreover, although the Complaint asserts that BNA and BSI constitute Whittaker's successors in interest (Docket Entry 1 at 3, ¶¶ 6-7), neither Dismissal Motion affidavit addresses Whittaker (see Docket Entries 30-1, 32-1).[6]

In response to the Dismissal Motions, Branson produced evidence regarding connections between, inter alia, Whittaker, BSI,

---

6    Whittaker's answer contains the same bald assertion regarding lack of personal jurisdiction as BNA's and BSI's answers. (See Docket Entry 15 at 2; Docket Entry 20 at 2; Docket Entry 21 at 2.) By participating in this litigation without reservation for more than a year after filing its answer, however, Whittaker relinquished any personal jurisdiction defense it possessed. See, e.g., Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60-62 (2d Cir. 1999) (concluding that, although it included the defense in its answer, the defendant forfeited its personal jurisdiction defense through its participation in litigation before pressing that defense); Plunkett, 409 F. Supp. 2d at 42 (same).

BNA, and talc. (See, e.g., Docket Entry 35-1 at 2-3 (article reporting a $7 million verdict "against Whittaker Clark & Daniels, a division of Brenntag North America" for "asbestos-tainted consumer talcum powder"); Docket Entries 35-10 (indicating that BSI possesses the (talc-associated) Whittaker trademark), 35-11 (same).)[7] Branson's evidence also undermines aspects of the jurisdictional image painted in the Dismissal Motion affidavits.

For example, BSI's supporting affidavit — which concedes that "BSI does sell some chemical products in North Carolina" (Docket Entry 32-1 at 2) — suggests that BSI came into existence in 2003; in particular, this affidavit asserts that "Mineral & Pigment Services, Inc. ('MPSI') was incorporated in . . . 2003" and "changed its name to Brenntag Specialties, Inc." in 2007. (Id. at 1; see also id. at 2 (discussing the "inception in 2003[ of] BSI").)[8] However, Branson produced evidence from multiple independent sources suggesting that at least some iteration of BSI existed prior to 2003. (See Docket Entry 35-7 at 2 (Bloomberg company summary indicating that "Mineral and Pigment Solutions, Inc. [(the "Original MPSI")] was merged into Brenntag Specialities, Inc." in 2007 and was "[f]ounded in **1890**" (emphasis in original));

---

7    In addition to submitting publically available evidence, Branson sought leave to engage in written and oral discovery of BSI and BNA "on personal jurisdiction issues raised by the [Dismissal M]otions" (Docket Entry 35-18 at 1). (See Docket Entry 34.)

8    BSI relies heavily on this asserted fact in disputing jurisdiction. (See, e.g., Docket Entry 32 at 2-3, 7-10.)

16

Docket Entry 35-6 at 10-13 (talc material safety data sheet issued by the Original MPSI under the Brenntag logo in 2002); <u>see also</u> Docket Entry 35-3 at 2 (stating, on ChemBuyersGuide.com website, that "[o]n September 1, 2007, Brenntag North America embarked on a new strategy that transformed their two speciality companies, Mineral and Pigment Solutions and ChemTech Specialities, into a new organization called Brenntag Specialties, Inc. (BSI)").)

This record warrants further factual development prior to the Court's adjudication of BNA's and BSI's jurisdictional assertions. In addition, certain jurisdictional issues, such as BNA's and BSI's relationship with Whittaker, appear intertwined with the merits of Branson's claims, which further militates towards deferral of these jurisdictional contentions. <u>See</u> <u>Kregler v. City of New York</u>, 608 F. Supp. 2d 465, 475 (S.D.N.Y. 2009) (explaining that Rule 12(i) preliminary hearings "cannot be employed to decide the merits of a dispute, or issues so closely interwoven with the merits so as to render it unlikely or impractical that the hearing would achieve a productive outcome"); <u>see also</u> <u>United States v. Central States Theatre Corp.</u>, 159 F. Supp. 552, 554-55 (D. Neb. 1957) (deferring consideration of jurisdictional defenses until trial, in part because "the issues tendered are basically factual" and their "pretrial determination . . . would be expensive both in money and in time, and administratively indiscreet and unwise[; t]he whole evidence available upon the disputed points[] . . . should be

17

before the court" in adjudicating those defenses); <u>Powell v. Knight</u>, 74 F. Supp. 191, 198 (E.D. Va. 1947) (deferring consideration of motion to dismiss because it "raises an issue which can best be disposed of at the trial").

Moreover, the delayed nature of BNA's and BSI's assertion of these defenses favors deferral. As the United States Supreme Court explained in reference to a similarly waivable defense:

> We are of opinion that the privilege is of such a nature that it must be asserted at latest before the expiration of the period allotted for entering a general appearance and challenging the merits. In ordinary course, when that period expires the defendant either will have appeared generally for the purpose of contesting the merits or by suffering a default will have asserted that his adversary's allegations be taken as confessed for the purposes of judgment. In either event the suit will have reached the stage where attention must be given to the merits. . . . To hold that such a privilege may be retained until after the suit has reached the stage for dealing with the merits and then be asserted would be in our opinion subversive of orderly procedure and make for harmful delay and confusion.

<u>Commercial Cas. Ins. Co. v. Consolidated Stone Co.</u>, 278 U.S. 177, 179-80 (1929).[9]

This case "reached the stage for dealing with the merits," <u>id.</u> at 180, many months ago. Indeed, less than half the discovery period remains. (<u>See</u> Docket Entries dated Sept. 26, 2015, and Sept. 28, 2015 (establishing discovery deadline of October 31,

---

[9] "Because challenges to jurisdiction over the person, venue, insufficiency of process and insufficiency of service of process are all waived under [Rule] 12(h)(1), the jurisprudence discussing waiver to any of the above applies by analogy to waiver of" the other defenses. <u>Manchester Knitted Fashions</u>, 967 F.2d at 693 n.7.

2016).)  Moreover, BNA and BSI bypassed multiple opportunities for preliminary resolution of their jurisdictional assertions.  For instance, they could have, <u>inter alia</u>:  (i) filed timely Rule 12(b)(2) motions to dismiss; (ii) requested a Rule 12(i) hearing promptly after filing their (untimely) answers, before submitting the Rule 26 Report; (iii) raised the need for resolution of jurisdictional issues in the Rule 26 Report; or (iv) brought Rule 12(i) motions promptly after the Court's adoption of the Rule 26 Report, rather than months into the discovery period.

In sum, under the circumstances of this case, the Court should defer adjudication of BSI's and BNA's jurisdictional contentions pursuant to Rule 12(i).

### E.  Rule 12(c) Analysis

Alternatively, if resolved "pursuant to Federal Rule of Civil Procedure 12(c)" (Docket Entry 29 at 1; Docket Entry 31 at 1), without a Rule 12(i) deferral, the Dismissal Motions should be denied.  As a preliminary matter, notwithstanding presentation of materials outside the pleadings, conversion of the Dismissal Motions into motions for summary judgment pursuant to Rule 12(d) remains improper.  Branson requests discovery on pertinent jurisdictional matters (<u>see</u> Docket Entry 34), including whether BSI sells talc in North Carolina, as well as information regarding BNA's and BSI's "relationship with Whittaker[ and] . . . the [pertinent product's] manufacturer" (Docket Entry 35 at 8).  (<u>See</u>

also Docket Entry 42 at 2 (requesting discovery on "the nature of [BNA] and BSI's involvement in selling talc into the stream of commerce that ultimately was found in the consumer product that [Branson] used").) Branson "must be given a reasonable opportunity to present all the material that is pertinent" to the jurisdictional assessment, Fed. R. Civ. P. 12(d), including information regarding any connections between BNA, BSI, and Whittaker, the relevant (allegedly) injury-producing product, and North Carolina, see, e.g., Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209 (4th Cir. 2001) (analyzing whether defendants possessed sufficient contacts for personal jurisdiction in North Carolina); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 58-63 (4th Cir. 1993) (analyzing whether corporate relationship justified exercise of jurisdiction where party lacked direct contacts with forum state). As such, particularly in the circumstances of this case — where (i) Branson presented documents from public sources that tend to establish such connections between BNA, BSI, Whittaker, and talc, and (ii) the affidavits in support of the Dismissal Motions fail to foreclose the existence of such connections — conversion of the Dismissal Motions without "afford[ing Branson] an opportunity for reasonable discovery" remains "'wholly inappropriate,'" Gay, 761 F.2d at 177-78.

20

Accordingly, the Court could only consider the pleadings in evaluating the Dismissal Motions under Rule 12(c). <u>See</u> <u>Alexander</u>, 801 F. Supp. 2d at 433.[10] The Complaint alleges that the "Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina." (Docket Entry 1 at 1-2.) It further asserts that BNA and BSI (i) constitute "successor[s] in interest to [Whittaker]" and (ii) "manufactured and sold asbestos-containing products used including talc by Mr. Branson." (<u>Id.</u> at 3, ¶¶ 6-7.) Additionally, the Complaint states that BSI and Whittaker possess registered agents in North Carolina. (<u>Id.</u> at 3, ¶ 7, at 4-5, ¶ 12.) Finally, it declares that BNA and BSI, "acting through their agents, servants, and/or employees," introduced asbestos-containing materials into the stream of commerce that harmed Branson in North Carolina. (<u>Id.</u> at 8, ¶ 29; <u>see also</u> <u>id.</u> at 2, ¶¶ 2-3, at 5, ¶ 14.)

Accepting these allegations as true and drawing all reasonable inferences in Branson's favor, the Court cannot "decide[] as a matter of law," <u>Alexander</u>, 801 F. Supp. 2d at 433 (internal quotation marks omitted), that it lacks personal jurisdiction over BNA and BSI, <u>see, e.g.</u>, <u>Universal Leather</u>, 773 F.3d at 558-63

_____

10  In this Rule 12(c) analysis, the Court could not consider the allegations in BNA's and BSI's answers because they conflict with the Complaint. <u>See</u> <u>Alexander</u>, 801 F. Supp. 2d at 433.

21

(conducting jurisdictional analysis and concluding that the plaintiff's "allegations and supporting affidavits[] . . . satisfy its prima facie burden of showing that [the defendant] purposefully availed itself of the privilege of conducting business in North Carolina"); Christian Sci., 259 F.3d at 215-18 (conducting tort-related specific jurisdiction analysis and affirming existence of jurisdiction). Thus, under a Rule 12(c) analysis, the Court should deny the Dismissal Motions.

## II. Discovery Motion

As a final matter, Branson seeks leave to engage in jurisdictional discovery prior to the Court's adjudication of the Dismissal Motions. (See Docket Entry 34.) In September 2015, the Court adopted the parties' Rule 26 Report, thereby authorizing discovery "on all relevant issues in the case, including but not limited to . . . all claims and defenses" (Docket Entry 27 at 1). (See Docket Entry dated Sept. 26, 2015.) Per the parties' proposal, aside from certain deadlines regarding expert discovery, the Court imposed no restrictions on the timing or sequence of discovery, save requiring its completion by October 31, 2016. (See Docket Entry 27 at 2-3.) As such, Branson does not need leave to engage in the requested discovery. The Court will therefore deny the Discovery Motion as moot.

## CONCLUSION

Although purportedly moving pursuant to Rule 12(c), BNA and BSI belatedly pursue preliminary adjudication of their personal jurisdiction defenses through the Dismissal Motions. Given the status of this litigation and the necessity of further factual development regarding those defenses, the Court should exercise its discretion to defer adjudication of those defenses until trial. Coordinately, in light of the Court's adoption of the Rule 26 Report, Branson does not require leave to engage in jurisdictional discovery.

**IT IS THEREFORE RECOMMENDED** that "Defendant Brenntag North America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 29) and "Defendant Brenntag Specialties, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 31) be denied without prejudice to resolution of any viable personal jurisdiction defense(s) at trial.

**IT IS ORDERED** that "Plaintiff's Motion for Limited Jurisdictional Discovery" (Docket Entry 34) is **DENIED AS MOOT.**

This 7th day of June, 2016.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**
